# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-0072-RFB |
| Plaintiff, | **ORDER** |
| v. | |
| VONTEAK ALEXANDER, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is Mr. Alexander's Motion to Suppress [ECF No. 38]. The Court held an evidentiary hearing on this Motion on November 11, 2017, February 5, 2018 and April 18, 2018. The Motion challenges the search of a Sprint cellular telephone by Detective Leung on April 16, 2016 without a warrant. Alexander argues that Leung received consent to search the Sprint phone from a third person, a minor female ("A.B.W."), who did not have actual or apparent authority to consent to a search of the phone. Alexander also asserts that, as a minor, A.B.W. could not consent to a search of the Sprint phone. Alexander concludes that the fruits of the search of the Sprint phone must be suppressed since the search of the phone was illegal. For the reasons stated below, the Court denies the Motion to Suppress.

## II. FACTUAL FINDINGS

Based upon the evidence received on the record and the Court's assessment of the credibility of witnesses, the Court makes the following findings of fact. On April 16, 2016, A.B.W., a minor female, approached security at the Orleans Hotel and Casino and told them she was a missing juvenile who was being sex trafficked. Orleans Security contacted the Las Vegas

Metropolitan Police Department ("Metro"). As A.B.W. had indicated that she was being trafficked, Metro dispatched a VICE detective, Detective Kenton, to the Orleans. Kenton conducted an initial interview with A.B.W. During this initial interview, A.B.W. confirmed her identity and again indicated that she had been involved in prostitution against her will and at the direction of another person. Kenton found A.B.W. to be credible in the interview. Kenton requested further assistance for the investigation and Detective Leung was assigned and dispatched to the Orleans to complete the investigation. Upon arriving the Orleans, Leung discussed the initial interview with Kenton.

Detective Leung then conducted a recorded interview of the A.B.W. A.B.W. explained that in the middle of March 2016 she had been abducted from the area of San Leandro, California by a man who she identified as Defendant Vonteak Alexander[1] and others. She was then forced to travel with them Los Angeles, California and coerced into engaging in prostitution. Alexander also promised to buy A.B.W. clothes and other things if she engaged in prostitution. Under these circumstances, A.B.W. "agreed" to prostitute herself for Alexander. According to A.B.W. Alexander later brought her to Las Vegas to engage in prostitution. She further explained that she engaged in prostitution in California and Las Vegas and turned over the money she made to Alexander.

A.B.W. had in her possession a Sprint cellular telephone with the number 510-866-6448 (the "Sprint phone") whose search is the subject of the Motion. She did not have any other phone in her possession, and she did not possess, while in Las Vegas, a separate personal cell phone. A.B.W. provided the number for the Sprint phone to Leung. A.B.W. identified Alexander as the person who had brought her to Las Vegas for the purpose of engaging in prostitution. A.B.W. told Leung that the Sprint phone was a "trap" phone that Alexander used to communicate with A.BW. and others while she was engaged in prostitution for him. A.B.W. told Leung that Alexander had given her the Sprint phone earlier in the day for her use. She told Leung that Alexander will usually ask to have the Sprint phone back at some point. Alexander had not asked on April 16 to

---

[1] The Court notes that the references to the alleged conduct of Mr. Alexander in the factual findings section of this order should not be construed as the Court making dispositive findings for the purposes of the trial or other motions regarding such conduct.

have the Sprint phone returned to him. Leung found A.B.W. to be candid and credible during the interview. The Court finds Leung's testimony on this point and others to be credible.

After the recorded interview, A.B.W. explained to Leung that she had previously used the phone. She told Leung that she had previously used the Sprint phone on other days. She explained that Alexander had given her the Sprint phone and the access code to the phone. A.B.W. indicated that she had used the Sprint phone on April 16, 2016 to text and call Alexander as well as others. She explained that Alexander primarily used a cell phone with the number 916-807-5262.

Leung then asked A.B.W. for consent to review the contents of the Sprint phone. The Sprint phone at that time was locked with an access code. A.B.W. consented to the examination of the phone and provided Leung with the access code to unlock the phone. With the access code, Leung was able to unlock the Sprint phone on the first attempt. He first reviewed the text messages on the phone that were sent by A.B.W. and received by A.B.W. Leung found these messages to be consistent with A.B.W.'s discussion with him about her communications with Alexander. Leung observed messages sent to and received from a cellular phone with the number 916-807-5262. This is a number that A.B.W. had previously identified as a number she normally called or texted to reach Alexander. At this time, Leung only reviewed the text messages and call log on the telephone. He did not conduct a full search of all of the contents of the phone. Leung then asked A.B.W. if he could impersonate her and text Alexander. She consented and Leung engaged in a series of text exchanges on the Sprint phone with someone he believed to be Alexander. These text exchanges further corroborated A.B.W.'s description of her relationship with Alexander in terms of their familiarity and her acts of prostitution as Alexander's responses suggested no confusion about who she was and the subject of her texts. Leung did not access Alexander's Facebook account through the Sprint phone and he did not send a friend request or any other message to Alexander's Facebook account from the Sprint phone.

/ / /

/ / /

/ / /

## III. LEGAL STANDARD

### A. Consent - Actual Authority

"[C]onsent is a recognized exception to the Fourth Amendment's protection." United States v. Arreguin, 735 F.3d 1168, 1174-75 (9th Cir. 2013). If consent comes from a third party, the government must demonstrate the third party had "shared use and joint access to or control over a searched area." Id. (internal citations omitted). The Court need only determine that the third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974); see also United States v. Tosti, 733 F.3d 816, 823 (9th Cir. 2013)(accord). Common authority is "joint access or control for most purposes." Matlock, 415 U.S. at 171 n.7.

The Ninth Circuit has also established that, even in circumstances where a third party has limited access or authority, a "defendant may assume the risk that the third party will at times exceed the scope of authorized access, as that is defined in precise and narrow terms." United States v. Sledge, 650 F.2d 1075, 1080 n.10 (9th Cir. 1981). Such assumption of risk may occur where an individual allows a third party total control of property or goods for even limited periods of time. United States v. Kim, 105 F.3d 1579, 1582 (9th Cir. 1997).

### B. Consent – Apparent Authority

In circumstances where an individual may not have 'actual authority' to consent to a search, "[u]nder the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." Arreguin, 735 F.3d at 1174. "Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances." Id. (citations omitted). Thus, in assessing whether an officer's belief was objectively reasonable, the court considers "the facts available to the officer at the moment." Id. (citation omitted) (emphasis in original).

/ / /

/ / /

/ / /

## IV. DISCUSSION

### A. Police Had Apparent Authority To Search The Phone

The Court finds that it was objectively reasonable for Detective Leung to believe that A.B.W. had apparent authority to authorize a search of the Sprint phone. The Court reaches this conclusion based upon several facts from which Leung could reasonably have inferred that A.B.W. had actual authority or at least had a sufficient relationship to the phone to authorize a search of its text messages and call log. First, A.B.W. had been provided the phone by its owner, Alexander. A.B.W. used the Sprint phone on the day of the search and had it used on previous occasions to make phone calls and send/receive text messages. Second, A.B.W. had the phone in her possession and had the access code to unlock the phone. The phone was unlocked on the first attempt by Leung with the access code provided by A.B.W. Third, the Court credits Leung's testimony that he believed A.B.W. when she told Leung that Alexander had freely given her the phone and allowed her to use it. A.B.W. did not indicate that there were limitations on how she could use the phone when she possessed it. Certainly, she was able to use it to send/receive text messages and make telephone calls. While A.B.W. indicated that eventually Alexander would request the phone be returned, she did not indicate during or after the interview that Alexander had made such a request on the day of the search. And A.B.W. had no other phone to use for her to make personal or other calls so Alexander would also have known she would be using the phone for other purposes beside talking and texting with him. Fourth, A.B.W.'s knowledge of the numbers that Alexander allegedly used indicated that she was not only familiar with the Sprint phone but also that she had used it on previous occasions with Alexander's permission. Otherwise, she would not have been able to describe the pattern of usage. She did not say, however, that Alexander had ever limited how she could use the Sprint phone when she possessed it. For all of these reasons, the Court finds that it was objectively reasonable for Leung to believe that A.B.W. had actual authority to consent to a search of the Sprint phone.

The Court rejects Alexander's argument that objectively Leung should have concluded that Alexander provided the Sprint phone to A.B.W. for a limited purpose or the phone was 'stolen.' Alexander emphasizes certain words "work" and "today" from one sentence in the interview of

A.B.W. to assert that A.B.W. was provided the Sprint phone for the limited purpose of her work as a prostitute on the particular day. The Court is unpersuaded by this argument because the Court finds that A.B.W. had used this phone on previous occasions and because she had used the phone for making personal calls. This argument ignores the entirety of the interview, context and other statements made by A.B.W. to Leung. A.B.W. did not say that she was limited in how she used the phone. Importantly, as noted earlier, A.B.W. did not have a personal cell phone. And, in fact, she told Leung that she had used the Sprint phone to make personal calls to her sister. A.B.W. had total access to all of the contents and functionality of the phone. Moreover, the Court finds that in consideration of the totality of the conversations and context of the relationship between A.B.W. and Alexander as both personal and professional as described to Leung it was reasonable for him to believe that A.B.W. had joint access to the entire contents of the Sprint phone. The fact that Alexander would eventually request the return of the Spring phone does not negate A.B.W.'s ability to use the phone for most or all purposes when she had it in her possession. Indeed, there is no indication that Alexander had made such a request to A.B.W. as of the time of the search of the phone.

Moreover, even if the Court were to find, which it does not, that A.B.W. had access or authority to Sprint phone for the limited purpose of making calls and sending/receiving texts, she still thus had the authority to consent to a search of the phone as it relates to the functions or operations regarding making calls and sending/receiving texts. This was in fact the nature of the search that was performed. The Court finds that the search of the phone by Leung was limited to the operations, functions or data regarding making calls and sending/receiving text messages. At a minimum, A.B.W. had a sufficient relationship to the operations and data on the Sprint phone regarding making calls and sending/receiving text messages to authorize a search of the phone regarding these functions and related data.

**B. Alexander Assumed The Risk Of A Search Of The Phone**

Additionally, the Court finds that, even assuming that A.B.W. did not have explicit authority to consent to a search of the Sprint phone, Alexander assumed the risk that A.B.W. would exceed the alleged limited authority proposed by Defendant's motion. The Court finds the

assumption of risk to be particularly and uniquely applicable in the circumstances of this case. Alexander undisputedly provided A.B.W. with the Sprint phone and its access code for use for calls and messaging on April 16, 2016. He did not tell A.B.W. she was limited in how she could use the phone. He never asked for the phone back. He knew she did not have another phone to use to make for personal calls, texts, etc. He had provided her with access to and usage of the phone on previous occasions. He knew that she would have the phone for at least the day without him directly monitoring her use of the phone. He knew that once he provided the access code, she would not be limited in how she used the phone. He never told her to keep the existence of the phone or her usage of it secret. All of these factual findings support the determination that Alexander assumed the risk that A.B.W. would exceed the alleged limited access he had authorized.

Additionally, Alexander had to have assumed the risk given the configuration of the phone and A.B.W.'s access to its entire contents. That is to say there has been no evidence in the record or finding by this Court that the cell phone in terms of its access could somehow be separated, in terms of viewing or searching, between "work" messages/calls and "personal" messages/calls. The review of the so-called work messages would in such a circumstance necessarily involve a review of the personal messages. The phone was not digitally partitioned or set in such a manner that access to its messages and calls could be so limited or bifurcated. And the Court finds that Alexander never intended or sought to protect or set apart certain messages or calls from others in terms of his configuration of the phone's settings. He therefore did not and could not control A.B.W.'s access to and use of all functions and content of the phone. Consequently, the Court finds that Alexander assumed the risk that A.B.W. would consent to a search of the phone's content. See e.g., United States v. Kim, 105 F.3d 1579, 158 (9th Cir. 1997)(noting that because the Defendant allowed a third party "total control on occasion" of certain he storage units "he assumed the risk" that the third party would allow a search of these units). The Court therefore also finds that A.B.W. had common authority over the phone, as the assumption of risk creates common authority over the phone. Id.

### C. A Minor Victim May Provide Consent To Search An Instrumentality Of Her Alleged Victimization

Finally, the Court rejects Alexander's argument that a minor cannot consent to the search of a third party's property. The Court finds that the cases cited by Alexander, including People v. Jacobs, 729 P.2d 757 (Cal. 1987), involved the consent of a minor to search parents' or related adults' homes not cell phones. Id. at 763-64. Moreover, the reasoning for such cases involves considerations that do not apply here. Specifically, in Jacobs, for example, the California Supreme Court noted that in the context of a search of a home, a parent's decision to allow a child or minor to remain alone in a home or residence does not necessarily imply the adult or parent granting authority to minor to authorize a search of the entire home. Id. In the instant case, the authority to use the Sprint phone for making calls and sending/receiving texts is coterminous with the authority to search functions and data related to making calls and sending/receiving texts. The cases cited by Alexander thus do not apply to the search of a cell phone and the Ninth Circuit has never held that a minor allegedly being victimized in the course of the commission of a federal crime could not consent to a search of an instrumentality of such alleged victimization that was in her possession. Such a policy or precedent would impede the protection of the very minors who are meant to be protected by the federal laws at issue in this case. Moreover, where an adult who is not the minor's parent provides the minor with access to or authority to a cell phone which is part of an instrumentality of the credibly alleged victimization of this minor, such an adult cannot reasonably rely upon the status of the minor—which makes her a more vulnerable victim—to vitiate valid consent by the minor of the cell phone. The Court rejects the Defendant's argument that A.B.W. could not as a minor provide valid consent to search the Sprint phone.

As the Court is denying the motion for the reasons noted, the Court does not reach the other arguments—inevitable discovery and good faith—asserted by the government in response to the motion to suppress.

///

///

///

## V. CONCLUSION

For the reasons stated,

**IT IS HEREBY ORDERED** that the Motion to Suppress [ECF No. 38] is DENIED. **DATED** this 7th day of May, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**