─────2:17-cr-00072-RFB─────

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3

4    UNITED STATES OF AMERICA,        )
                                      )  Case No. 2:17-cr-00072-RFB
5                  Plaintiff,         )
                                      )  Las Vegas, Nevada
6          vs.                        )  Thursday, August 5, 2021
                                      )  11:07 a.m.
7    VONTEAK ALEXANDER,               )
                                      )  HEARING REGARDING RESTITUTION
8                  Defendant.         )
     ─────────────────────────────────)  *C E R T I F I E D   C O P Y*

9

10
          REPORTER'S TRANSCRIPT OF ZOOM VIDEOCONFERENCE PROCEEDINGS
11
              THE HONORABLE RICHARD F. BOULWARE, II,
12                  UNITED STATES DISTRICT JUDGE

13

14
     APPEARANCES:
15   For the Plaintiff:        **ELHAM ROOHANI, AUSA**
                               UNITED STATES ATTORNEY'S OFFICE
16                             501 Las Vegas Boulevard South, Suite 1100
                               Las Vegas, Nevada 89101
17                             (702) 388-6336

18   For the Defendant:        **PAUL RIDDLE, ESQ.**
                               FEDERAL PUBLIC DEFENDER
19                             411 E. Bonneville Avenue, Suite 250
                               Las Vegas, Nevada 89101
20                             (702) 388-6577

21

22
     COURT REPORTER:           Patricia L. Ganci, RMR, CRR
23                             United States District Court
                               333 Las Vegas Boulevard South, Room 1334
24                             Las Vegas, Nevada  89101

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.

```
                        ─2:17-cr-00072-RFB─
```

 1 APPEARANCES CONTINUED:
   For Jane Doe:

 2
            **ROSE M. MUKHAR, ESQ.**
 3          JUSTICE AT LAST
            P.O.  Box 566
 4          San Carlos, CA 94070
            (650) 995-4893

 5

 6      LAS VEGAS, NEVADA; THURSDAY, AUGUST 5, 2021; 11:07 A.M.

 7                          --oOo--

 8                    P R O C E E D I N G S

 9          THE COURT:  All right, counsel.  I'm going to call this

10 case at this time.  This is the case of United States versus

11 Vonteak Alexander, Case Number 2:17-cr-72.  If counsel would

12 please announce their presence for the record starting with

13 Defense counsel.

14          Ah.  Mr. Riddle, you seem to be muted.

15          There you go.

16          MR. RIDDLE:  You would think I'd have this figured out

17 by now, Your Honor, but I still struggle.  I apologize.

18          Good morning.  Paul Riddle on behalf of Vonteak

19 Alexander, who is present by way of video teleconferencing, and

20 he consents to proceeding today by way of video.

21          THE COURT:  Okay.  And good morning.

22          Good morning, Mr. Alexander.  Can you see and hear me?

23          THE DEFENDANT:  No, you paused right now.

24          THE COURT:  I said, can you hear me now?

25          THE DEFENDANT:  I can hear you, but your -- your --

2:17-cr-00072-RFB

1   your video's paused.

2          THE COURT:  Okay.  But -- but okay.  But you can hear

3   me, though, now and see me?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  All right.  And you're agreeing to

6   appear by videoconference voluntarily.  Is that correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  All right.  I do find that you have

9   knowingly and voluntarily waived your right to appear in person,

10  and we shall proceed by videoconference pursuant to the CARES

11  Act.

12         Ms. Roohani, for the Government.

13         MS. ROOHANI:  Good morning, Your Honor.  Eli Roohani

14  for the United States.

15         THE COURT:  And good morning.

16         And we also have counsel here, Ms. Mukhar.

17         MS. MUKHAR:  Good morning, Your Honor.  Rose Mukhar,

18  pro bono attorney for crime victim, Jane Doe.

19         THE COURT:  Okay.

20         So we're here for a restitution hearing, but my concern

21  is a little bit -- Ms. Mukhar, I don't know if you saw

22  Mr. Riddle's filing yesterday and whether or not you've had an

23  opportunity to be able to respond to that or not.  I'm just

24  concerned that there may not -- you may not have had enough time

25  to respond.  And so are we able to proceed today?

2:17-cr-00072-RFB

1          MS. MUKHAR:  Thank you, Your Honor.

2          Yes, I did get an e-mail yesterday at 4:30 in the

3   afternoon, a notification from the Court of a filing by

4   Mr. Riddle, although I didn't get a courtesy notification in

5   advance of that.  But I feel prepared to go forward today based

6   on the filing.

7          THE COURT:  Okay.  So why don't you go ahead.  And why

8   don't we start there, Ms. Mukhar, because here's what I will

9   tell you, and this is the issue for me, is your filing is based

10  upon contested conduct in this case.  There's no dispute about

11  the fact that the plea agreement says that Mr. Alexander has

12  admitted to Transportation in Aid of Unlawful Activity.

13  Precisely the extent of that unlawful activity is not agreed

14  upon by the parties or admitted by Mr. Alexander.

15         And so it would seem to me that some of what you have

16  requested would be disputed and could not be ordered by the

17  Court, which would be different potentially, for example, from

18  other types of expenses which you reference, but you didn't

19  document, so, for example, potential medical or treatment

20  expenses, things of that nature as a result of the

21  Transportation in Aid of Unlawful Activity.  That would -- that

22  would seem to be something that might be more in line with what

23  the particular statute says and that's not contested in relation

24  to the conduct.

25         So my concern and my question to you, Ms. Mukhar, is

2:17-cr-00072-RFB

1    that your -- your request is based upon contested conduct, and

2    while there are limitations as it relates to an individual's due

3    process rights, it certainly can't -- from my perspective,

4    restitution can't be based upon conduct that is so explicitly

5    contested and denied.  So I would like for you to respond to

6    that, please.

7         MS. MUKHAR:  Thank you, Your Honor, and I'm happy to.

8    And I just had some notes briefly prepared, but I am happy to

9    just jump right in.

10        You're right.  This is a restitution hearing on behalf

11   of a crime victim who was age 12 years old.  And if we look at

12   what the actual plea itself is, that actually relates

13   specifically to the losses of this 12-year-old child.  So, you

14   know, what is the plea itself?  I don't know if I can just --

15   Court can humor me for a moment and I can pull it up.  We all

16   are familiar with it.

17        But just, the defendant traveled in interstate foreign

18   commerce.  So there -- so there's two counts of the plea for

19   interstate travel, and the loss is directly tied to that

20   interstate travel and the unlawful activity that came from that.

21   So --

22        THE COURT:  But that's not admitted, right.  You have

23   put forward unlawful activity that's based upon trafficking,

24   right, and I don't have a record in front of me that is -- would

25   establish that based upon the plea.  Certainly there is

1  suggestion that that was what the unlawful activity was, but

2  Mr. Alexander and his counsel have contested the nature of what

3  that unlawful activity was as laid out in your restitution

4  submission.

5        So how can I accept that when I don't actually have

6  testimony on that one way or the other?  I don't have an

7  adequate record to be able to establish what the time frame or

8  the period was when the defendant and the Government in this

9  case have not put forward facts that would establish that.  So

10  how could I then order restitution based upon that time frame?

11        MS. MUKHAR:  Thank you, Your Honor.

12        And so I would go -- request that the Court go back,

13  and what the Court previously found within the PSR, findings

14  that the victim was credible in her statements to law

15  enforcement about what actually transpired.  And based on that,

16  the findings for some time less -- I believe it was in 2020 or

17  2019 is what the Court initially had ordered back then.

18        THE COURT:  So, I'm sorry, are you -- you're suggesting

19  that what the Court could do is use the PSR as a basis for

20  making its determination.

21        Now, Mr. Riddle, I want to ask you -- I'm going to go

22  back and look at this section of the PSR, but, perhaps, you

23  could tell me which portions were objected to and which portions

24  were not.  Because I know this has been an ongoing issue in this

25  case as relates to what the actual offense conduct was.

1          Your -- your camera's a little bit -- oh, now you're

2   not frozen.  Having some technical difficulties --

3          MR. RIDDLE:  Your Honor, apparently I'm having some

4   internet issues today.  Can I call in so I don't have any

5   internet issues?

6          THE COURT:  Sure, sure.  That's fine.

7          MR. RIDDLE:  I'll call in right now.  I'm so sorry.

8          THE COURT:  That's all right.

9          (Pause.)

10          THE COURT:  And -- well, let's wait for Mr. Riddle.

11   Because, Ms. Roohani, I'm going to ask you to also comment as

12   well.

13          Let's see.  Mr. Riddle, can you hear us now?

14          MR. RIDDLE:  I can hear you through my phone, Your

15   Honor.  I muted my computer, and hopefully I can -- there won't

16   be any breakups in the audio now that I have you on my phone.

17          THE COURT:  Okay.  Yes, I can hear you more clearly,

18   and we don't necessarily need to see you.  We do know what you

19   look like.

20          So, Mr. Riddle, again, perhaps, you could -- I mean,

21   because this -- as I have indicated, this has been an ongoing

22   issue and dispute in this case, and I want to ask you about both

23   the PSR, but also Ms. Mukhar's argument as it relates to what's

24   in it.

25          MR. RIDDLE:  And, Your Honor, I missed some of that,

—2:17-cr-00072-RFB—

1  but it's my understanding that the Court made significant

2  revisions to the PSR after our last hearing because we contested

3  everything that essentially wasn't admitted to by -- in the plea

4  agreement and in the filed submission that we provided to the

5  Court.  So obviously what is in the PSR after the Court's

6  revisions, we admit to that conduct.

7          But, Your Honor, our argument still is that the conduct

8  related to -- did not result in restitution under 18 U.S.C.

9  1593, but instead is restitution under the statute that's cited

10  specifically in the plea agreement, which is 2259, which is a

11  separate analysis than the analysis that's laid out in

12  Ms. Mukhar's motion.

13          THE COURT:  That's true, but the Court could use her

14  same argument under 2259 to order restitution, and looking at

15  2259, certainly there is a -- there is a provision for lost

16  income, right?

17          MR. RIDDLE:  There is a provision for lost income, Your

18  Honor, yes.

19          THE COURT:  So it seems to me, Mr. Riddle, one of the

20  issues, I mean, isn't necessarily the statute because it does

21  seem to me that under the statute that Mr. Alexander has

22  admitted applies, which is 2259, the victim in this case could

23  receive lost income in addition to the other -- the other

24  expenses which I believe are listed in (c)(2) there.  There's

25  medical services.  There is physical and occupational therapy.

1   There's transportation, housing and child care, lost income,

2   reasonable attorney's fees, and any other relevant costs

3   incurred by the victim.

4        So you would agree that those are relevant potential

5   categories under 2259, correct, Mr. Riddle?

6        MR. RIDDLE:  I would, Your Honor.  And then our --

7   Mr. Alexander's argument would be, however, that he was not and

8   never admitted to prostituting the victim in this case.  And so

9   lost income would not be the result of any prostitution that she

10  may have been involved in.  He denies that he was the

11  beneficiary of any of that.  So lost income would -- it wouldn't

12  relate to any -- any fee that she may have collected if she was,

13  in fact, engaged in prostitution.

14        THE COURT:  Right.

15        So, Ms. Mukhar, I'm going to go back and look at -- I'm

16  looking at the offense conduct.  But the offense conduct does

17  not ... hold on.  Let me -- let me read the PSR for a moment.

18        (Pause.)

19        THE COURT:  So, Ms. Mukhar, as I read the revised PSR,

20  in paragraphs 14 and 15 and 16, it does not indicate that

21  Mr. Alexander is admitting that he facilitated prostitution.  If

22  that is the case, it seems to me that arguments about lost

23  income would not apply.  It does seem to me that there could be

24  potential restitution under the other categories of 2259 because

25  I also agree with Mr. Riddle that 2259 is the statute that

─2:17-cr-00072-RFB─

 1  applies.

 2          So what I think may be appropriate, Ms. Mukhar, is you

 3  having the Court's ruling saying that 2259 is the applicable

 4  statute, and given the fact that you may not have had sufficient

 5  time to be able to respond, that I would allow you to be able to

 6  respond to that argument and supplement your submission and look

 7  at those categories because I'm not sure your submission

 8  included all of the categories that might be relevant in this

 9  statute that I do find applies which Mr. Alexander has admitted

10  applies, which is 2259.

11          So, Ms. Mukhar, I don't think that lost income would

12  apply based upon the admitted facts in the record, but I think

13  potentially the other losses might apply.  But I leave that to

14  you, but I want to give you the time to be able to submit

15  something in response to Mr. Riddle's submission.

16          MS. MUKHAR:  Thank you, Your Honor.

17          I mean, we -- you know, in addition to -- if we're not

18  looking at the lost wages, we could definitely provide and

19  forward either orally or I can brief the Court afterwards about

20  additional losses that aren't specific to lost income that deal

21  with -- because also 2259 looks at potential ongoing or

22  occurring-in-the-future harm.  So psychological, emotional

23  therapy, long-term, I mean.  If we look at the long-term effects

24  of the -- of what occurred, we know that for subject matter

25  experts with lived experience even at the United States advisory

1  counsel level that there is ongoing therapy for individuals who

2  are now adults in their 30s who were trafficked when they were

3  teenagers.

4        So aside from the fact that we're not admitting or the

5  Defense is not admitting to that unlawful activity, we know that

6  there's long-term therapy costs involved.

7        THE COURT:  So let me say this, Ms. Mukhar, I want to

8  be clear.  What I am finding is that Mr. Alexander has not

9  admitted that he prostituted this victim.  It's not to say that

10  the record doesn't support, because I believe it does support,

11  that he brought her here and that she engaged in prostitution.

12  It's an important, I think, distinction.

13        So I'm not saying that she couldn't recover for the --

14  for trauma related to her engaged, potentially, in prostitution.

15  What I'm saying is there's a difference between me making that

16  finding and me making the finding that he was her pimp or

17  whatever the term you'd want to use is because then the lost

18  income's based upon ill-gotten gains, which is what your

19  argument has been.  That's -- but I'm not saying, and I want to

20  be clear, that the Court is finding that she didn't engage in

21  prostitution.  What I am saying is that the record does not

22  support -- support a finding that he specifically forced her

23  into prostitution or was her pimp.

24        But I do think the record supports a finding that she

25  engaged in unlawful activity here, which was prostitution, and

—2:17-cr-00072-RFB—

1  that she was transported, right, across state lines for the

2  purpose of that unlawful activity.

3        And I think that that's, again, an important

4  distinction because it doesn't lead to the Court finding that

5  Mr. Alexander would be subject to ill-gotten gains, but it

6  doesn't mean that he couldn't be subject to restitution related

7  to the unlawful activity that he facilitated.

8        Do you understand what I'm saying, Ms. Mukhar?

9        MS. MUKHAR:  I do understand, Your Honor.  And, you

10  know, and in the utmost respect it almost sounds as if what

11  we're asking is for the victim to admit that she's committed a

12  crime of prostitution herself.  And -- and if -- upon that

13  admittance, there potentially is -- because that's what she

14  engaged in --

15        THE COURT:  I'm not saying that.

16        I don't think there's any dispute, at least from what I

17  understand, that she engaged unfortunately in prostitution acts.

18  I don't -- I don't think you -- I thought that that was

19  something that unfortunately is what you admitted happened.  So

20  I didn't understand that -- and I'm not asking that she admit to

21  additional conduct, right.  That's not what I'm saying.

22        What I'm saying is that ill-gotten gains is based upon

23  a particular finding that he was her pimp.  That's not a finding

24  I think that's supported by the record.  But any trauma or other

25  effects with respect to the victim that occurred as a result of

1  this activity, I do think could be subject to restitution.  I'm

2  not in any way suggesting that there would need to be further

3  findings as to what the unlawful activity was.  I'm simply

4  finding that it can't be ill-gotten gains to him as a pimp

5  because that fact has not been established, but it can -- there

6  can be restitution as it relates to what the conduct was, right.

7  And what I mean by that is specifically there are categories

8  here related to medical and psychological current and future

9  expenses.  There are other categories that may apply,

10  Ms. Mukhar.

11        And so all I'm asking you to do is to be able to have

12  the submission that itemizes those so that the Court can see

13  them specifically and rather than having to speculate about

14  them, because I don't think I can do that.  And that would

15  include -- if you're going to be asking for fees, Ms. Mukhar,

16  that would include that as well.  What I'm asking for is a

17  submission just to be very clear about what are the categories

18  under the relevant statute, which is 18 U.S.C. 2259, that you

19  think apply and what those amounts are with -- with a degree of

20  certainty and support so that the Court can rule on them

21  specifically.

22        And so, again, I'm not saying restitution doesn't

23  apply.  I'm just saying it can't -- it does not apply in the

24  context on this record of ill-gotten gains to Mr. Alexander

25  based upon him being her pimp.

2:17-cr-00072-RFB

1          MS. MUKHAR:  Thank you, Your Honor.

2          Yeah, I am happy to submit to the Court, as -- as you

3     highlighted, a breakdown or category itemizing different or

4     related losses as it pertains to Jane Doe's ongoing and

5     continued therapy.

6          THE COURT:  And whatever -- or whatever other

7     categories under 2259, Ms. Mukhar, you think are appropriate.

8          MS. MUKHAR:  Right.

9          THE COURT:  And I leave it to you because you better

10    know what those potential categories would be.  And I'm just

11    saying that I do find that 2259 is the appropriate statute, but

12    there are several different categories there.  And so for me to

13    be able to order restitution, I would need to have a submission

14    that identifies which category you are relying upon and what the

15    amount is.  And then that would also allow Mr. Riddle and

16    Mr. Alexander to be able to respond.  But I don't think we can

17    do it today just generically without having more specific

18    information.

19          MS. MUKHAR:  Thank you, Your Honor.  I really

20    appreciate that.  I'm sorry that this landed today and that we

21    weren't notified in advance because it's possible that we could

22    have already, you know, presented something to the Court if we

23    had known about the Defense filing that occurred last night.

24    So -- but I'm happy with the Court granting the additional time

25    to submit the breakdown of the different categories and itemize

 1  those.

 2          THE COURT:  Okay.  Well, I think that's appropriate.

 3  How much time, Ms. Mukhar, do you think that you would need?

 4          MS. MUKHAR:  Your Honor, if we could do this within the

 5  next two to three weeks, that would be great.

 6          THE COURT:  That's fine.

 7          MS. MUKHAR:  I understand the time constraint issues

 8  with -- with Defense counsel.  There might be -- with the

 9  transition of new counsel.

10          THE COURT:  So do you think if I gave you two weeks for

11  the submission and then we came back in three weeks, would that

12  work?

13          Mr. Riddle, would that potentially work?

14          MR. RIDDLE:  Your Honor, I will be transitioning to

15  another office in the State of Utah during that time frame, but

16  I -- certainly I can bring another attorney up to speed on this

17  issue since it's just this one -- this one issue regarding

18  restitution I think somebody can be brought up to speed and can

19  handle that in my absence, Your Honor.

20          THE COURT:  Okay.  I appreciate that, Mr. Riddle,

21  because it would really be just the one issue, the very

22  focussed, particular issue we're talking about.

23          So, Ms. Mukhar, I'm happy to give you two weeks to

24  do -- to submit something.  Let's say by August 20th.

25          MS. MUKHAR:  Okay.

—2:17-cr-00072-RFB—

1          THE COURT:  And let's see if we can't find a date after

2     that.  Maybe September 2nd.  Let's look at that date.

3          MS. MUKHAR:  I'm just pulling up my calendar, Your

4     Honor.

5          MS. ROOHANI:  Your Honor, me and Mr. Burton are not

6     available on that date.  We have ... (audio distortion)

7          (Court reporter clarification.)

8          MS. ROOHANI:  Sorry.  I'll try to go slower.

9          Mr. Burton and I are not available on September the

10    2nd.  We have an evidentiary hearing in front of Judge Ferenbach

11    that's likely to take all day.

12         THE COURT:  Okay.

13         MS. ROOHANI:  But in fairness, Your Honor, I should let

14    you know, I don't imagine that I'm going to have a lot to add.

15    I don't really have a dog in this fight at this point.  So if

16    we -- if that's the date that works for everyone, we can find a

17    warm body to come and fill in for us.

18         THE COURT:  Okay.  How about August 26, Ms. Roohani and

19    Ms. Mukhar?

20         MS. MUKHAR:  That works for me, Your Honor.  Thank you.

21         MS. ROOHANI:  That's fine, Your Honor.  That will work.

22         THE COURT:  Okay.

23         So let's look at the -- August 26, let's say,

24    around ... hold on.

25         (Pause.)

2:17-cr-00072-RFB

1          THE COURT:  3 o'clock.

2          Okay?

3          MS. MUKHAR:  Yes, Your Honor.

4          THE COURT:  All right then.

5          MS. ROOHANI:  I'm sorry.  If I may make a record on

6    just -- on one point.

7          THE COURT:  Yes.

8          MS. ROOHANI:  The only -- the only statement that I

9    wanted to make was regarding the JVTA assessment that's being

10   challenged.  I want to make clear that the case law that was

11   cited by Defense counsel is correct.  It's based upon

12   Mr. Alexander's future earning potential, which we do believe

13   that he has earning potential, but based upon the statute of

14   conviction, the Government is not seeking the JVTA in this case.

15   So the Court should not impose that.

16         THE COURT:  Okay.

17         MS. ROOHANI:  And so I think that will alleviate at

18   least one of the two issues on which the Government would be

19   asked to comment.

20         THE COURT:  Okay.  I appreciate that.  Thank you for

21   that clarification.

22         So we'll come back then on August 26 at 3 o'clock to

23   finalize this restitution.  And, Ms. Mukhar, we'll await your

24   submission on the 20th of August.

25         MS. MUKHAR:  Thank you, Your Honor.

2:17-cr-00072-RFB

1         THE COURT:  Is there anything else that we need to do

2    today?

3         THE DEFENDANT:  Yeah, Your Honor.

4         THE COURT:  Yes, Mr. Alexander.

5         THE DEFENDANT:  I was going to say, what documents can

6    I present in my behalf concerning the 2259?

7         THE COURT:  Well, we haven't seen what Ms. Mukhar's

8    going to present.  Really --

9         THE DEFENDANT:  Okay.

10        THE COURT:  -- the documents are really about the

11   victim in this case.  There's really nothing that you can

12   present that would, I think, be material.  So, Mr. Alexander,

13   this is really about whatever expenses they think would be

14   associated with the victim.  I don't think there's anything that

15   you could provide that would be relevant because it would all be

16   based upon the victim's expenses.

17        So your attorneys can make legal arguments, but there's

18   not any documents that I would envision would be material or

19   relevant that you could submit because it will be, and generally

20   is based upon the statute, her expenses.  So you can speak with

21   your attorneys about that, but I don't think there's any

22   relevant documents for you to submit.  There's simply an

23   argument -- as your attorneys have made arguments, they can make

24   legal arguments about what would be appropriate.  But I don't

25   think that there's any -- there's no document that could be

———2:17-cr-00072-RFB———

1  submitted.  Okay?

2          THE DEFENDANT:  All right.

3          THE COURT:  So all right then.  Anything else,

4  Ms. Mukhar?

5          MS. MUKHAR:  No, Your Honor.  Thank you.

6          THE COURT:  Mr. Riddle, anything else?

7          MR. RIDDLE:  No, Your Honor.  And I apologize for my

8  internet failures today.

9          THE COURT:  That's all right.  It happens.

10          Ms. Roohani, anything else?

11          MS. ROOHANI:  No, Your Honor.  Thank you for your time.

12          THE COURT:  Okay.  Everyone, please be well and be

13  safe.  We'll be adjourned.  Thank you.

14          THE DEFENDANT:  All right.  Thank you.

15          (Whereupon the proceedings concluded at 11:36 a.m.)

16

17

18

19

20

21

22

23

24

25

2:17-cr-00072-RFB

1                              --oOo--

2                  COURT REPORTER'S CERTIFICATE

3

4        I, PATRICIA L. GANCI, Official Court Reporter, United

5   States District Court, District of Nevada, Las Vegas, Nevada,

6   certify that the foregoing is a correct transcript from the

7   record of proceedings in the above-entitled matter.

8

9   Date:  August 5, 2021.

10                                   /s/ **Patricia L. Ganci**

11                                   Patricia L. Ganci, RMR, CRR

12                                   CCR #937

13

14

15

16

17

18

19

20

21

22

23

24

25