ROSE M. MUKHAR (CA Bar # 258742) *(Pro Hac Vice)*
Justice At Last, Inc.
P.O. Box 566
San Carlos, CA 94070
Tel.: 650-995-4893
Fax: 650-590-6994
Email: rose@justiceatlast.org

DANIEL B. HEIDTKE (Bar # 12975) (*Local Counsel*)
Duane Morris LLP
100 North City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Tel.: 702-868-2605
Fax: 702-543-3263
Email: dbheidtke@duanemorris.com

Pro Bono Attorneys For Victim Jane Doe

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br><br>        vs.<br><br><br><br>VONTEAK ALEXANDER,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 2:17-cr-00072-RFB

**VICTIM'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF RESTITUTION**

     Victim Jane Doe, by and through her counsel, files this Supplemental Submission in Support of Restitution. Jane Doe respectfully requests that this Court impose a restitution order in the amount of $1,466,482.82.  Jane Doe respectfully submits this Supplemental Submission in order to assist the Court in determining restitution.

## Table of Contents

**INTRODUCTION** ........................................................................................................... - 5 -

**SUMMARY OF PROCEEDINGS** ................................................................................ - 5 -

**SUMMARY OF FACTS** ............................................................................................... - 6 -

**ARGUMENT** ................................................................................................................. - 8 -

**CONCLUSION** .............................................................................................................. - 22 -

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
467 U.S. 837, 842 (1984) …………………………………………………………..20

*Paroline v. United States,*
572 U.S. 434, 439 (2014) …………………………………………………………..8

*U.S. v. Adcock,*
534 F.3d 635 (7th Cir. 2008) ……………………………………………………..22

*United States v. Berk,*
666 F. Supp. 2d 182, 186 (D. Me. 2009), *as amended* (Oct. 29, 2009) ……………..………8

*United States v. Burdi,*
414 F.3d 216, 221 (1st Cir. 2005) ………………………………..…………………..16

*United States v. Butler,*
92 F.3d 960, 964 (9th Cir. 1996) …………..…...………………………………...…..21

*United States v. Collins,*
209 F.3d 1, 3 (1st Cir. 1999) ………………...…………………………………......20

*United States. v. Culp,*
608 F. App'x 390, 392 (6th Cir. 2015) …………………………………………..18

*United States v. Dailey,*
941 F.3d 1183, 1186 (9th Cir. 2019) ……………………………………………15

*United States v. Innarelli,*
524 F.3d 286, 294 (1st Cir. 2008) ………………………………………………16

*United States v. Kearney,*
672 F.3d 81, 100 (1st Cir. 2012) ………………………………………………16

*U.S. v. Lundquist,*
847 F.Supp.2d 364 (N.D.N.Y. 2011) ……………………………………………9

*United States v. Lewis,*
791 F. Supp. 2d 81 (D.D.C. 2011) ….…………………………………………21

*United States v. Lucas,*
11 F. App'x 1 (9th Cir. 2001) ……………………………………………………17

*United States v. Mi Kyung Byun,*
539 F.3d 982, 988 (9th Cir. 2008) …………………………………………........19

*United States v. Fu Sheng Kuo,*
620 F.3d 1158 (9th Cir. 2010) ……………………………………………………20

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

*United States v. Mammedov,*
　　304 F. App'x 922 (2d Cir. 2008) ...………………………………………………21

*United States v. Richard,*
　　738 F.2d 1120, 1122 (10th Cir. 1984) ...………………………………………17

*United States v. Robinson,*
　　508 F. App'x 867 (11th Cir. 2013) ………………………………………….....21

*United States v. Sabhnani,*
　　599 F.3d 215 (2d Cir. 2010) ...…………………………………………………16

*United States v. Sabhnani,*
　　566 F. Supp. 2d 139 (E.D.N.Y. 2008) …………………………………………..17

*United States v. Webster,*
　　2011 WL 8478276, at *1 (9th Cir. Nov. 28, 2011) ……………………………..18

**<u>STATUTES</u>**

18 U.S.C. § 16 ...………………………………………………………………………21

18 U.S.C. § 1694(C) ……………………………………………………………………5

18 U.S.C. § 1591 …………………………………………………………………5, 14, 20

18 U.S.C. § 1593 ……………………………………………………16, 17, 19, 20

18 U.S.C. § 1593(a) ……………………………………………………………….....20

18 U.S.C. § 1593(b)(3) ………………………………………………………………20

18 U.S.C. § 1594(C) ……………………………………………………………5, 14

18 U.S.C. § 1952(A)(3)(A)...……………………………………5, 6, 14, 15, 16, 17

18 U.S.C. § 2259(c)(2)(D) …………………………6, 8, 9, 10, 12, 13, 14, 15, 16, 17, 22

18 U.S.C. § 2422(B) ……………………………………………………………………5

18 U.S.C. § 2423(A) ……………………………………………………………5, 22

18 U.S.C. § 3663A ……………………………………………………………21, 22

18 U.S.C. § 3663A(a)(1). ………………………………………………...………….21

18 U.S.C. § 3663A(a)(2)………………………………………………………………21

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

## INTRODUCTION

The Court indicted Defendant Vonteak Alexander on five counts of human trafficking charges: Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1694(c); Sex Trafficking in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2) and (c); Conspiracy to Transport for Prostitution or Other Criminal Sexual Activity in violation of 18 U.S.C. § 1594(c); Transportation for Prostitution or Other Criminal, Sexual Activity in violation of 18 U.S.C. § 2423(a); and Coercion and Enticement in violation of 18 U.S.C. § 2422(b). Defendant entered into a guilty plea for two counts of Interstate Travel in Aid of Unlawful Activity in violation of 18 U.S.C. § 1952(a)(3)(A) on May 15, 2019 and was sentenced on May 4, 2021. In his plea, Defendant agreed that the Court may calculate losses based on the "dismissed counts and uncharged conduct." *Binding Plea Agreement Under Federal rule Criminal Procedure 11(c)(1)(A) and (C)* filed May 15, 2019, Pg. 8. As detailed below, victim Jane Doe has suffered and continues to suffer significant harm from Defendant's criminal conduct. Jane Doe respectfully requests that this Court impose a restitution order in the amount of $1,466,482.82, which includes lost future earnings, relocation costs, future therapy costs, attorney's fees and costs, relocation costs and lost income. Jane Doe respectfully submits this Supplemental Submission in order to assist the Court in determining restitution.

## SUMMARY OF PROCEEDINGS

On February 28, 2017, the Court indicted Defendant on five counts: Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1694(c); Sex Trafficking in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), (b)(2) and (c); Conspiracy to Transport for Prostitution or Other Criminal Sexual Activity in violation of 18 U.S.C. § 1594(c); Transportation for Prostitution or Other Criminal, Sexual Activity in violation of 18 U.S.C. § 2423(a); and Coercion and Enticement in violation of 18 U.S.C. § 2422(b).

On May 15, 2019, Defendant pled guilty to Interstate Travel in Aid of Unlawful Activity in violation of 18 U.S.C. § 1952(a)(3)(A). Defendant's plea stipulated that "the Court may consider losses derived from the counts of conviction **as well as losses caused from dismissed counts and uncharged conduct** in which the Defendant has been involved." *Binding Plea Agreement Under Federal rule Criminal Procedure 11(c)(1)(A) and (C)* filed May 15, 2019, Pg. 8–9 (emphasis added) (hereinafter "Plea Agreement").

Defendant was sentenced on May 4, 2021 and during the subsequent restitution hearing on August 5, 2021, Jane Doe requested a restitution order of $15,000, which was Jane Doe's lost wages using calculations of the Defendant's ill-gotten gains. The Court rejected Jane Doe's claim for lost wages and asked Jane Doe to re-calculate restitution under 18 U.S.C. § 2259.

Having reviewed 18 U.S.C. § 2259 and further considered Jane Doe's losses, it is clear that Jane Doe's previous restitution request significantly undervalued the appropriate restitution. Also, based on a careful review of the Plea Agreement, Jane Doe also believes that restitution should include lost wages as discussed in further detail below.

The Court has currently set Defendant's restitution hearing on August 26, 2021 at 3:00 PM.

## SUMMARY OF FACTS

Jane Doe is the crime victim in this case and a survivor of sexual exploitation and human trafficking at the hands of Defendant.[1] Defendant recruited and then sex trafficked Jane Doe from March 28, 2016 through April 16, 2016 while Jane Doe was twelve years old. Jane Doe has suffered extreme physical, mental, and emotional damages as a result of Defendant's crimes against her.

On the night of March 28, 2016, Defendant abducted Jane Doe in San Leandro, California. Defendant approached Jane Doe in an alleyway, grabbed her, put her in his car, locked the doors,

---

[1] Regardless of whether Defendant pled to the facts in this section, these facts are nevertheless relevant for the Court's restitution determination because Defendant's plea agreement explicitly allows the Court to consider "**dismissed counts**" and "**uncharged conduct**" involving the Defendant. *See, Exhibit A - Binding Plea Agreement Under Federal rule Criminal Procedure 11(c)(1)(A) and (C)* filed May 15, 2019, Pg. 8 (emphasis added).

and drove away. Defendant and Jane Doe had no prior relationship. Jane Doe struggled to get free, but Defendant assaulted and drugged her until she fell asleep.

Defendant then drove twelve-year-old Jane Doe from San Leandro, California to Los Angeles, California to Las Vegas, Nevada with the intent that Jane Doe engage in commercial sex acts. Many times during that period, Defendant violently assaulted and threatened Ms. Doe such that she was forced to engage in sexual acts with strangers for money. Jane Doe was required to give Defendant all money earned.

Defendant first kept Jane Doe in Los Angeles for two or three days. He sent her to the track to sell sex for one night, instructing her to charge $50 for oral sex and at least $80 for sex. Jane Doe was forced to have sex with two adult men that night, and she brought back Defendant approximately $200.

Defendant then drove Jane Doe to Las Vegas, Nevada, where he forced her to work nearly every night for an average of 13 hours a day for several weeks. Jane Doe made approximately $500 to $1000 per night for the several weeks Defendant kept her in Las Vegas. During this time, Defendant forced Jane Doe to perform sexual acts on multiple adult men in hotel rooms and cars. In addition, Defendant himself had sex with Jane Doe nearly every night that he kept her in Las Vegas.

On April 16, 2016, Jane Doe approached security at the Orleans Hotel and Casino in Las Vegas and told them she was a missing juvenile who was being sex trafficked. Defendant was subsequently arrested and indicted on February 28, 2017.

Jane Doe has suffered extreme physical, emotional, and mental harm resulting from Defendant's crimes against her. She was repeatedly abused and violated by Defendant and the multiple adult men Defendant forced Jane Doe to have commercial sex with.

Jane Doe feared and still fears for her life and the lives of her family. Jane Doe's life was change forever because of Defendant's crimes against her.

## ARGUMENT

## I. VICTIM JANE DOE IS ENTITLED TO MANDATORY RESTITUTION UNDER 18 U.S.C. § 2259 FOR VARIOUS LOSSES.

Restitution is grounded in fairness and is designed to restore the victim to the *status quo ante*, in order to make the crime-depleted victim whole again.[2] 18 U.S.C. § 2259 was enacted as a component of the Violence Against Women Act of 1994 and requires district courts to award restitution for certain federal criminal offenses.[3] Under this statute, a victim may be entitled to the extent the defendant's offense proximately caused a victim's losses.[4] "Victim" was defined in statute as the individual harmed as a result of the commission of a crime.[5]

The Court ordered Jane Doe to provide restitution calculations under 18 U.S.C. § 2259. The section makes restitution mandatory for the "full amount of the victim's losses," which are defined as including: "lost income;" "medical services relating to physical, psychiatric, or psychological care;" "physical and occupational therapy or rehabilitation;" "reasonable attorneys' fees, as well as other costs incurred;" "necessary transportation, temporary housing, and childcare expenses;" and any other relevant losses incurred by the victim. 18 U.S.C. § 2259(c)(2)(A), (B), (C), (D), (E), (F).

The victim's losses include both "any costs incurred, or that are reasonably projected to be incurred in the future." *Id.* § 2259(c)(2). Accordingly, Jane Doe requests restitution for: (A) lost income that is reasonably projected to be incurred in the future in the form of lost future earnings, (B) costs of medical services relating to psychiatric and psychological care that are reasonably projected to be incurred in the future; (C) necessary attorney fees and costs related to the

---

[2] Restitution in Federal Cases, Congressional Research Service, Prepared for Members and Committees of Congress, October 15, 2019.
[3] *Paroline v. United States*, 572 U.S. 434, 439 (2014).
[4] *United States v. Berk*, 666 F. Supp. 2d 182, 186 (D. Me. 2009), *as amended* (Oct. 29, 2009)
[5] *Id.*

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

representation of a minor crime victim to ensure her crime victim's rights were protected and enforced; (D) necessary relocation costs incurred; and (E) lost wages.

### A. Lost Income in the Form of Lost Future Earnings

Under 18 U.S.C. § 2259(c)(2)(D), Jane Doe is entitled to the full amount of income lost as a proximate result of her victimization. Further, a victim is entitled to lost future income under this section. In *U.S. v. Lundquist*, the court held that restitution in the amount of $2,855,173 for lost wages and benefits for a child victim was reasonable because the victim was unable to stay at her jobs as an adult, and an expert stated that the victim was in need of vocational counseling and guidance and would have an ongoing loss of earnings capacity.[6]

Jane Doe's victimization at such a young age as twelve years old drastically changed the course of her life and earnings capacity. Prior to her victimization, Jane Doe had dreams of going to college and becoming a veterinarian. She was a straight-A student, her mom and oldest sister had both attended college, and her other older sister is currently attending college as well. Making it through high school and college to become a veterinarian was very much within her reach. But after being victimized by Defendant, Jane Doe was placed in out-of-state programing to address the traumatization she had been through.[7] When she returned to California to her family they had to relocate out of state out of fear for Jane Doe and her family's safety, and she was never able to perform in school in the ways she had prior to her victimization.[8] Jane Doe never finished high school, currently doesn't have the capacity or the means to attend college, and likely will never be

---

[6] *U.S. v. Lundquist*, 847 F.Supp.2d 364 (N.D.N.Y. 2011).

[7] See Jane Doe's Mother's Impact Statement submitted to the Court for Defendant's Sentencing Hearing. "Once we rescued her, we had her in a youth facility and then she went to an out of state facility that had a program for youth that had been exploited and forced to be on drugs. She stayed there for nineteen months and graduated from that program. However after having gone through the program she is still not whole, still not the sweet girl I once knew, and still tormented about the brutal violent memories from when she was being exploited by the defendant."

[8] *Id.* "She was afraid to stay in California so we put clothes in the car and drove out of state to relocate with just a few clothes on our backs and when we relocated we had to purchase everything new. This is how much I want my child to be in a good safe space away for all the exploitation. However, she is still not safe. [Jane Doe] saw one of the people that she knew from CA that was a part of that world we left and she became even more withdrawn from us."

able to pursue becoming a veterinarian.[9] Instead, she is currently working a part-time job at a fast-food restaurant making a low wage with no motivation to pursue higher education at this time. Had Jane Doe not been victimized at twelve years old, it is likely that she would have remained on the same academic excellence track, completed high school on time, and be attending college right now and working towards her goal of becoming a veterinarian.[10]

The estimated lifetime earnings for a woman with a college degree in California[11] is approximately $4,366,785. *See Exhibit C – STOUT Analysis.* Note that while this number assumes a college education, it does not assume the veterinarian license Jane Doe had hoped to earn prior to her victimhood. Considering Jane Doe's current occupation and lack of high school or college education, Jane Doe's actual lifetime earnings is estimated at approximately $3,291,765. *Id.* By subtracting Jane Doe's estimated actual earnings post-victimization and discounting the difference to a present value, we see that Defendant's crimes against Jane Doe has resulted in an estimated $1,027,137 loss in lifetime earnings. *Id.*

Therefore, Jane Doe requests $1,027,137 for lost future earnings.

**B. Future Medical Expenses Relating to Psychiatric and Psychological Care**

Under 18 U.S.C. § 2259(c)(2)(A), Jane Doe is entitled to the full amount of projected medical expenses for services relating to psychiatric and psychological care that are the proximate result of her victimization. Jane Doe met virtually with Dr. Halleh Seddighzadeh after the August 5, 2021 hearing when the Court requested that Jane Doe re-calculate her restitution request under 18 U.S.C. § 2259. Dr. Seddighzadeh is a Forensic Traumatologist and cross-cultural Counter-

---

[9] *Id.* "I made sure that my child understands that I am nonjudgmental and that I just want her to be ok. She said to me, "Mom I'm not ok." All I know is that [Jane Doe] is a frightened little girl that has been lied to and taken advantage of and sold into slavery and at this time she doesn't have the skills or support to process this and move on."

[10] See Exhibit D, Declaration of Dr. Halleh Seddighzadeh, In Support of Restitution Calculations for Therapeutic and Mental Health Support and Loss of Earnings Capacity: "Jane Doe currently reports suffering from flashbacks, insomnia, depression, and anxiety and this has likely contributed to her inability to maintain gainful employment."

[11] Because Defendant kidnapped Jane Doe out of California, it can be assumed that she would have remained in California throughout her adulthood but for Defendant's crime.

Trafficking expert, and she agrees with the clinical assessment and diagnosis by Willow Rock Adolescent Psychiatric Center from 4/30/2016 that **Jane Doe currently still has Post Traumatic Stress Disorder**.  (Please see Exhibit D, Declaration of Dr. Halleh Seddighzadeh.)

> Based on my expertise as a Traumatologist and Human Trafficking Expert, I believe the diagnosis of Post-Traumatic Stress Disorder (PTSD) as clinically assessed and determined by Willow Rock Adolescent Psychiatric Center 4/30/2016 **as a result of being abducted, sexually exploited and trafficked at age of 12 by the defendant is accurate, and from Jane Doe's reported symptoms still a presenting issue to date.**
>
> I recommend long-term psychiatric treatment for Jane Doe. From my expertise with child torture victims and child trafficking victims, they require lifelong care because they deal with short and long-term effects throughout their lives. In the short-term, **Jane Doe currently reports suffering from flashbacks, insomnia, depression, and anxiety and this has likely contributed to her inability to maintain gainful employment and lack of motivation to pursue higher education**. Over the long-term, it is possible for her to develop additional trauma related problems with Socio-economic challenges, Trust, Forming relationships, Self-confidence and Self-esteem, Concentration, Learning Disorders, Chronic Fatigue, Emotional Dysregulation, Depressive disorders, Sleep disorders, Eating Disorders, Substance Misuse, Suicidal ideation, Heightened Cortisol levels and significant medical and health related issues that can result in Hypertension, Asthma, Chronic Obstructive Pulmonary Disease, Stroke, Kidney Disease, Obesity, Diabetes, High-blood pressure and even Cancer. Future life events such as defendant's eventual release from prison, may also renew old traumas, requiring additional care throughout adulthood. **All of these possible additional trauma-related problems could impact her earning capacity and contribute to further loss of earnings.**
> (Exhibit D, pg. 2) (emphasis added)

Accordingly, Dr. Seddighzadeh recommends "intensive individual therapy twice a week for 15 years, followed by a lifetime of ongoing individual therapy … Additionally, some type of case management and vocational counseling is recommended to support her and help keep her motivated to move forward with her healing." (Exhibit D, pg. 3). Please see Exhibit E that provides an estimate of the total projected minimum future therapy costs at 15 years of intensive therapy at twice per week for a total of $390,000 estimated out of pocket expenses.

Therefore, Jane Doe respectfully requests $390,000 in future medical expenses relating to psychiatric and psychological care.

### C. Attorney Fees and Costs Related To the Necessary Representation of a Minor Crime Victim To Ensure Her Crime Victim's Rights Were Protected and Enforced

Under 18 U.S.C. § 2259(c)(2)(E), Jane Doe is entitled to reasonable attorneys' fees, as well as other costs incurred. Here, Jane Doe retained Justice At Last as her crime victims' rights attorneys for this criminal matter in January 2017 because both Jane Doe and her mother were fearful of the Defendant and unsure of Jane Doe's rights as a crime victim. (See generally, Jane Doe and Jane Doe's Mother's Impact Statements). With over four years of crime victim's rights representation, Justice At Last attorneys spent approximately 203 hours providing legal services, valued at $150 per hour,[12] totaling $30,450. *Exhibit B – Declaration of Rose Mukhar.* Further, during the course of this case, Jane Doe's mother flew to Nevada to support her minor daughter when Jane Doe was subpoenaed to testify in front of the grand jury. Jane Doe's attorney also attended the grand jury as well as traveled to meet with Jane Doe in-person prior to her testimony to advise her of her rights as a crime victim. The flight costs for both Jane Doe's mother and crime victim's rights attorney were covered by Justice At Last and total $608.00. Therefore, on behalf of Jane Doe, Justice At Last, as Jane Doe's Crime Victim's Rights Attorney is requesting attorney's fees and out of pocket expenses in the amount of $31,058.00

### D. Necessary Transportation and Relocation Costs

Under 18 U.S.C. § 2259(c)(2)(A), Jane Doe is entitled to the full amount of expenses spent on necessary transportation and temporary housing incurred as the proximate result of her victimization.

Immediately following Jane Doe's return to California, she and her whole family had to move out of state due to safety concerns resulting from the crime. Jane Doe's mother relocated Jane

---

[12] Justice At Last is a nonprofit law firm, exclusively serving trafficking victims. The average hourly civil attorney rate is $338 per hour in the San Francisco Bay Area and it is submitted that the present calculations are reasonable at $150 per hour. See Exhibit B, Declaration of Rose Mukhar.

Doe and her sisters from California to a southern state. (See Jane Doe's Mother's Impact Statement).  They drove approximately 2700 miles in a mini-van over 5 days and 4 nights, requiring 4 nights in hotels during their journey. Additionally, the family was temporarily housed in a hotel until permanent housing was secured, which occurred 16 days later, requiring an additional 15 nights in a hotel.  Because the journey was made in such necessary haste out of safety concerns and it has been several years since the relocation, Jane Doe's mother does not have receipts for those relocation expenses costs. However, based on the gas prices from 2018, it is estimated that Jane Doe's mother had to spend at least $437.82 on gas.[13] Additionally, based on the non-authoritative sources below, a conservative national average estimate is $150 for a one-night hotel stay, so that Jane Doe's mother spent approximately $2,850 on 19 nights of temporary housing to ensure Jane Doe's safety.[14]

Therefore, Jane Doe requests $3,287.82 for the necessary travel and temporary housing expenses that resulted from her family's need to relocate because of her victimization.

### E.  Lost Income In the Form of Past Lost Wages

Under 18 U.S.C. § 2259(c)(2)(D), Jane Doe is entitled to the full amount of income lost as a proximate result of her victimization, and this includes actual lost wages.  Defense Counsel submitted that 18 U.S.C. § 2259 is the appropriate analysis for restitution.  *See Defendant's Motion on Restitution*.  Nonetheless, Defense Counsel also argued lost wages as intended in 18 U.S.C. § 2259 does not apply because the Defendant "never admitted to prostituting the victim in this case. And so lost income would not be the result of any prostitution that she may have been involved in.

---

[13] Jane Doe's mother guestimates they drove 2700 miles to relocate outside of California.  When we rely on calculations using https://www.fueleconomy.gov/trip/ we get an estimated cost of $437.82

[14] "Demand Drives U.S. Hotels," Dawit Habtemariam, March 27, 2018, Business Travel News, https://www.businesstravelnews.com/Corporate-Travel-Index/2018/Demand-Drives-US-Hotels and "Analysis:  How Have Hotel Prices Changed in 2020 vs. 2019?"  Sam Kemmis, Aug. 24, 2020, Nerdwallet. https://www.nerdwallet.com/article/travel/analysis-how-have-hotel-prices-changed-in-2020-vs-2019

He denies that he was the beneficiary of any of that." *Hearing Regarding Restitution, Certified Copy, August 5, 2021, Law Vegas, Nevada, Transcript pg. 9 (hereinafter "Transcript")*. Similarly, this Court stated that while 18 U.S.C. § 2259 analysis for restitution is appropriate, because the Defendant was not admitting that he "facilitated prostitution," that those "… arguments about lost income would not apply." *Id*. Jane Doe respectfully disagrees primarily because of the language the Defendant agreed to in his Plea Agreement and respectfully requests that this Court reassess lost income under the analysis of 18 U.S.C. § 2259(c)(2)(D).

**1) 18 U.S.C. § 2259(c)(2)(D) Allows for a Victim to Receive Lost Wages Regardless of What Offense a Defendant Pleads To.**

Defendant's May 15, 2019 plea to Interstate Travel in Aid of Unlawful Activity in violation of 18 U.S.C. § 1952(a)(3)(A) articulates that Defendant "acknowledges that the conduct to which he is entering a plea gives rise to mandatory restitution to the victim" and agrees that, for the purpose of assessing restitution, "the Court may consider losses derived from the counts of conviction **as well as losses caused from dismissed counts and uncharged conduct** in which the Defendant has been involved." Plea Agreement, pg. 8-9 (emphasis added).

Nowhere in the Plea Agreement is it written or implied that the Defendant's mandatory restitution only applies to crimes that he admitted to. Likewise, the Plea Agreement does not state that if the Defendant contests any activity that he was charged with that he then is exonerated from those dismissed counts in regards to restitution. Mandatory restitution means just that; it is mandatory that a victim be awarded restitution for losses derived from a defendant's conduct regardless of the dismissed counts.

Here, at least two counts from the initial indictment that were dismissed involved sex trafficking of a minor. *See* 18 U.S.C. §1591, §1594(c). Regardless that these counts were dismissed and the underlying conduct was uncharged or unstipulated, in accordance with the language in Defendant's plea, the charges and underlying conduct may still be used to calculate restitution. After all, Jane Doe's forced prostitution did not occur in a vacuum. Twelve-year-old Jane Doe did not prostitute herself, nor did she then gift the proceeds from the forced sex acts to the Defendant of her own volition. In the interest of fairness to victim Jane Doe, she needs restitution for the stolen

wages to make her whole as far as possible.[15] If the Defendant is not ordered to pay restitution for Jane Doe's lost wages, then how will she re-cover those losses? It is therefore proper for the Court to calculate lost wages under 18 U.S.C. § 2259(c)(2)(D).

### 2) Calculations Under FSLA Allow For Jane Doe To Request Past Lost Wages of a Minimum of $4,632.75.

Jane Doe was forced to prostitute for the Defendant for approximately 20 days during which she never received any wages. *See United States v. Vonteak Alexander Indictment, February 28, 2017 and Jane Doe's Impact Statement*. Jane Doe was forced to do sex work for him approximately 13 hours per day on average during that time period without meal breaks or rest periods. *See Jane Doe's Impact Statement and Victim's Statement Re: Sentencing and Restitution*. This Court recognized that "the record supports a finding that she engaged in unlawful activity here, which was prostitution, and that she was transported, right, across state lines for the purpose of that unlawful activity." *Hearing Regarding Restitution, Certified Copy, August 5, 2021, Law Vegas, Nevada, Transcript pages 11-12 (hereinafter "Transcript")*. Indeed, that is the same "unlawful activity" that the Defendant plead guilty to in Counts 1 and 2, "Interstate Travel in Aid of Unlawful Activity, in violation of 18 U.S.C. 1952(a)(3)(A)" and it is the same conduct that directly caused Jane Doe the loss of the stolen wages because she was never paid for the forced sex work. *See Plea Agreement, pg. 2 at II and Jane Doe's Impact Statement*.

This Court can calculate the lost wages of Jane Doe through the Fair Labor Standards Act (FLSA) which establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees in the private sector and in Federal, State, and local governments.[16] Covered nonexempt workers are entitled to a minimum wage of not less than $7.25 per hour effective July 24, 2009. *Id.* Overtime pay at a rate not less than one and one-half times the regular rate of pay is required after 40 hours of work in a workweek. *Id.* While restitution calculations may not be based upon speculation or surmise,[17] it is inappropriate for a defendant to object to the

---

[15] Firefighters v. Stotts, 467 U.S. 561, 582 n. 15 (1984) ("[F]ederal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, make whole insofar as possible the victim…")

[16] See Department of Labor, "Wages and the Fair Labor Standards Act" July 29, 2021 https://www.dol.gov/agencies/whd/flsa

[17] *United States v. Innarelli*, 524 F.3d 286, 294 (1st Cir. 2008).

sufficiency of the government's evidence where the defendant has failed maintain records regarding the hours the victim was forced work.[18] Mathematical precision is not required, but "a reasonable determination of appropriate restitution by resolving uncertainties **with a view towards achieving fairness to the victim,**" is necessary.[19] (emphasis added).

Based on achieving fairness to Jane Doe, under the FLSA, Jane Doe is entitled to $7.25 per hour worked, plus overtime, calculated at one and one-half times that rate for every hour Jane Doe worked over forty hours per week. 29 U.S.C. §§ 206(a) & (b), 207(a), 216(d). Furthermore, the FLSA provides that any employer who violates the Act shall be liable for "an additional equal amount as liquidated damages." *Id.* § 216(d); *United States v. Sabhnani*, 599 F.3d 215, 259–60 (2d Cir. 2010).

Accordingly, Jane Doe is entitled to restitution in the amount of her unpaid minimum wages and overtime compensation under the FLSA, as well as liquidated damages, which may be calculated as follows: [(([120 hours] x $7.25) + ([133 hours] x $10.875)) x 2]. Thus, at a minimum, Jane Doe is entitled to lost wages restitution in the amount of $4,632.75. *See United States v. Sabhnani*, 566 F. Supp. 2d 139, 142–46 (E.D.N.Y. 2008), *aff'd in part, rev'd in part*, 599 F.3d 215 (2d Cir. 2010).

Therefore, based on restitution calculations under 18 U.S.C. § 2259 Jane Doe requests restitution that includes her future lost income, future therapeutic costs, attorney fees, costs, actual relocation costs incurred and actual lost wages. Respectfully, Jane Doe requests lost wages, either calculated under the FLSA of $4,632.75 or for a greater amount based on the Defendant's ill-gotten gains under 18 U.S.C. § 1593 analyzed below.

---

[18] *Gurung v. Malhotra*, 851 F. Supp. 2d 583 (S.D.N.Y. 2012) (Where an employer fails to maintain adequate records of his employees' compensable time as required by the Fair Labor Standards Act (FLSA), a plaintiff employee seeking wages and overtime compensation must produce only sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference).

[19] *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012); *see also United States v. Burdi*, 414 F.3d 216, 221 (1st Cir. 2005) (noting that the Court must make "a reasonable determination of appropriate restitution by resolving uncertainties with a view towards achieving fairness to the victim.").

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

## II.    A VICTIM IS ENTITLED TO RECEIVE FEDERAL RESTITUTION FOR LOST WAGES BY A DEFENDANT WHO PLED TO INTERSTATE TRAVEL IN AID OF UNLAWFUL ACTIVITY, IN VIOLATION OF 18 U.S.C. § 1952(A)(3)(A).

In addition to restitution calculations under 18 U.S.C. § 2259 for future lost income, future medical costs related to psychiatric and psychological care, attorney fees and related costs, and relocation costs incurred, Jane Doe respectfully submits that the Court should also award restitution under 18 U.S.C. § 1593 factoring on the Defendant's ill-gotten gains for lost wages rather than calculations under the FLSA for the reasons set out below.  Again, respectfully, Jane Doe believes the Court was mistaken as to the law in declining at the last hearing to consider restitution under 18 U.S.C. § 1593.

A victim is entitled to receive federal restitution for lost wages via ill-gotten gains analysis under 18 U.S.C. § 1593 even though the defendant was not convicted of a human trafficking charge. A victim's restitution right is to be broadly and liberally construed, and a Crime Victim has a right to be treated with fairness and respect.[20] There is a legal presumption for the full imposition of restitution in any case in which the offense caused harm to a victim.[21] Even in the rare cases where the authorized restitution is still "discretionary" rather than mandatory, there is a strong presumption for imposition of full restitution.[22] A sentencing judge has substantial discretion over the entire process leading to a restitution order.[23]

A victim is entitled to restitution for ill-gotten gains even if a defendant contests the factual basis of dismissed charges or uncharged conduct. The Ninth Circuit has upheld an imposition of a sentence based on uncharged conduct.[24]  Congress also directed, as part of the Mandatory Victims Restitution Act (MVRA), in an advisory note to 18 U.S.C. § 3551, that the Attorney General must ensure that, "in all plea agreements negotiated by the United States, consideration is given to

---

[20] 18 U.S.C. § 3771(a)(8) Crime Victims' Rights, United States Crime Victims' Rights Act, "A crime victim has the following rights:  The right to be treated with fairness and with respect for the victim's dignity and privacy."
[21] Catharine M. Goodwin, Federal Criminal Restitution § 1:1 (2021), https://1.next.westlaw.com/Document/I072c99917f4411dd88779e8710d1c213/View/FullText.html?ppcid=ca0d6e825bbd4544b7c2a28c84fc3732&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=%28sc.Category%29
[22] *Id.*
[23] *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir. 1984).
[24] *United States v. Lucas*, 11 F. App'x 1 (9th Cir. 2001)

requesting that the defendant provide full restitution to all victims of all charges contained in the indictment or information, ***without regard to the counts to which the defendant actually pleaded***."[25] (emphasis added).

## A. Contested Issues

Restitution has been ordered time and again in cases where a defendant contests the facts or the sufficiency of the evidence. In *United States v. Webster*, the defendant was convicted of multiple sex trafficking charges and appealed.[26] On appeal, the defendant argued that the victims' testimony demonstrated voluntary participation in prostitution and that the district court erred by awarding prostitution proceeds as restitution.[27] The court affirmed the convictions and restitution order, stating that the statutory language is clear that mandatory restitution includes not only the victims' actual losses, but also the defendant's ill-gotten gains.[28]

In *United States v. Dailey*, the defendant was originally charged with human trafficking crimes but pled to **Interstate Travel in Aid of Unlawful Activity**.[29] (emphasis added). The defendant's primary argument on appeal was that she was wrongly required to register as a sex offender because her conviction for violating the Travel Act did not constitute a "sex offense."[30] The Ninth Circuit disagreed.[31] The defendant's plea colloquy revealed that the defendant drove the minor victim from Arizona to Nevada with the intent that the minor victim would engage in prostitution.[32] The court found that the defendant's "conduct that by its nature is a sex offense against a minor" for which defendant was required to register as sex offender.[33]

Even though the defendant in *Dailey* contested that her crimes were sexual in nature based on the agreed upon plea, the court still found that they were sexual for the purposes of sentencing. Similarly, in the case at hand, under the sworn facts that the Defendant admitted to and declared

---

[25] Mandatory Victim Restitution; Promulgation of Regulations by Attorney General Pub. L. 104–132, title II, §209, Apr. 24, 1996, 110 Stat. 1240 <https://uscode.house.gov/statviewer.htm?volume=110&page=1240>,
[26] *United States v. Webster,* 2011 WL 8478276, at *1 (9th Cir. Nov. 28, 2011)
[27] *Id.*
[28] *Id.* at *3.
[29] *United States v. Dailey*, 941 F.3d 1183, 1186 (9th Cir. 2019).
[30] *Id.* at 1189.
[31] *Id.*
[32] *Id.* at 1190.
[33] *Id.*

under penalty of perjury, the Defendant agreed that he "drove and rented a car carrying '[Jane Doe]' from within California to Las Vegas, Nevada."[34] Further "Alexander knew or should have known that '[Jane Doe]' was a vulnerable victim by virtue of being a missing person. Alexander admits that he traveled in interstate commerce with the intent to have '[Jane Doe]' engage in unlawful activity…"[35] This Court recognized that "the record supports a finding that she engaged in unlawful activity here, which was prostitution, and that she was transported, right, across state lines for the purpose of that unlawful activity." *See Transcript, pg. 11-12.*

In a separate case, the Ninth Circuit has also held that transportation of a minor with the intent the minor engage in prostitution is a "sex offense," even in the absence of an act of actual prostitution. See *United States v. Mi Kyung Byun* 539 F.3d 982, 988 (9th Cir. 2008).[36] If the Ninth Circuit found Dailey's pled-to conduct of **Interstate Travel in Aid of Unlawful Activity** a sexual offence for sentencing purposes and similarly found Byun's transportation of a minor with intent the minor would engage in prostitution also a sexual offense the purposes of sentencing regardless of each defendants' pleas, then it would be appropriate for this Court to find Defendant's admitted conduct of Interstate Travel in Aid of Unlawful Activity equivalent to at least one of Defendant's indictment counts of Conspiracy to Commit Sex Trafficking, Sex Trafficking, Conspiracy to Transport for Prostitution or Other Criminal Sexual Activity, Transportation for Prostitution or Other Criminal, Sexual Activity and or Coercion and Enticement.[37]

**B. 18 U.S.C. 1593 Mandatory Restitution**

"Providing the victim with their traffickers' ill-gotten gains is critical to restoring a victim's dignity, helping them gain power back from their exploiters who took advantage of their hope for a

---

[34] Plea Agreement, at 4.

[35] Plea Agreement, at 4.

[36] *United States v. Mi Kyung Byun*, 539 F.3d 982, 988 (9th Cir. 2008) ('**As a common sense matter, transporting a minor to the United States with the intent that she engage in prostitution is no less "conduct that by its nature is a sex offense against a minor"** than is soliciting a minor to the same end. The "transportation with intent" conduct in which Byun engaged was almost certain to end in Byun urging, advising, commanding, or otherwise inciting Seo to practice prostitution, unless Byun was deflected from carrying out her intent. Moreover, neither the transportation nor the solicitation crimes **require that any prostitution actually occur**, but both may well result in prostitution by a minor. The catchall "specified offense" category therefore likely includes crimes such as Byun's.' (emphasis added).

[37] See United States v. Vonteak Alexander, Indictment, February 28, 2017.

1   better life. Restitution . . . attack[s] the greed of the trafficker and the idea of a human being as a

2   commodity. It is a way to ensure that victims receive access to justice."[38]

3         The legislative intent of 18 U.S.C. § 1593 is clear: to strengthen protections for "victims of

4   trafficking with essential services and eligibility for a broad range of Federal benefits and

5   restitution."[39] One goal of section 1593 is to restore a victim's stolen wages and profits realized by a

6   defendant during the commission of the offense.[40] The statute defines these losses to include, "the

7   greater of the gross income or value to the defendant of the victim's services or labor or the value of

8   the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair

9   Labor Standards Act (29 U.S.C. § 201 et seq.)."[41] The Court must give effect to the unambiguously

10   expressed intent of Congress.[42]

11      **C. Defendant's Ill-Gotten Gains under 18 U.S.C. § 1593(a)**

12         Under 18 U.S.C. § 1593(a), a court shall include in the restitution order "the greater of the

13   gross income or value to the defendant of the victim's services or labor or the value of the victim's

14   labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards

15   Act [("FLSA")]."  18 U.S.C. § 1593(b)(3); *see also Lewis*, 791 F. Supp. 2d at 90; *United States v.*

16   *Fu Sheng Kuo,* 620 F.3d 1158, 1164 (9th Cir. 2010) ("[T]he Trafficking Act mandates restitution

17   that includes a defendant's ill-gotten gains.").  This is true for victims of sex trafficking,

18   notwithstanding that their earnings came from illegal conduct.  *Culp*, 608 F. App'x at 392; *United*

19   *States v. Mammedov,* 304 F. App'x 922, 927 (2d Cir. 2008) ("[T]he express terms of 18 U.S.C. §

20   1593(b)(3) require that the victims in this case, i.e., persons who engaged in commercial sex acts

21   within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings

22   came from illegal conduct."); *United States v. Robinson*, 508 F. App'x 867, 871 (11th Cir. 2013)

23

24

---

[38] U.S. Dep't of State, Trafficking in Persons Report, Topics of Special Interest: Restitution (2009).

[39] Radio Address Paper On Combating Violence Against Women President Clinton's Radio Address To the Nation: Legislation To Combat Violence Against Women, Fight Trafficking In Persons, and Assist Victims of Terrorism October, 2000 WL 1617213, at *2.

[40] William Nolan, Mandatory Restitution: Complying with the Trafficking Victims Protection Act, United States Attorneys' Bulletin 95, 97 (2017),

[41] 18 U.S.C. § 1593(b)(3)

[42] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984)

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

("A child engaged in a sex trafficking enterprise falls squarely within this definition" of victim under § 1593(c), especially because minors cannot consent to prostitution).

The record supports a reasonably certain estimate of Jane Doe's losses with respect to Defendant's ill-gotten gains. Defendant forced Jane Doe into prostitution and to turn over all the monies she earned to him.

Accordingly, Jane Doe is entitled to restitution for the value of her services to Defendant over the time Jane Doe was forced to do sex work for him, which may be calculated as follows: average daily earnings [$750] x number of days worked for defendant [20 days]. Thus, Jane Doe is entitled to restitution in the amount of $15,000. *See Lewis*, 791 F. Supp. 2d at 92 & n.12 (appropriate calculation for gross income or value to defendant is "the average daily amount [victim] earned over the period of time the victim worked for the defendant").

Here, the defendant's ill-gotten gains of $15,000 is more than the amount Jane Doe is owed under FSLA of $4,632.75. Therefore, per 18 U.S.C. § 1593(a), Defendant's ill-gotten gains should be used for the lost wages calculations of $15,000 and that amount is being requested.

**D. 18 U.S.C. § 3663A. Mandatory Restitution to Victims of Certain Crimes**

Mandatory Restitution to Victims of Certain Crimes (MRVA) provides that a defendant convicted of a crime of violence shall be ordered to make restitution to the victim of the offense.[43] A crime of violence is an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other felony offense that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[44] "Victim" is defined broadly as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."[45] The Ninth Circuit has held that the **transportation**

---

[43] 18 U.S.C. § 3663A(a)(1).
[44] 18 U.S.C. § 16.
[45] 18 U.S.C. § 3663A(a)(2); *United States v. Collins*, 209 F.3d 1, 3 (1st Cir. 1999) (noting that "[w]ith the 1990 amendment [to MVRA], Congress broadened the scope of restitution from losses attributable solely to the offense of

**of minors under** 18 U.S.C. § 2423 (which was Count Four of Defendant's Indictment) is considered a crime of violence under the MRVA.[46] (emphasis added). While the Defendant in the case at hand was not convicted of transportation of minors, he did admit to traveling in interstate commerce with the intent to have Jane Doe, a vulnerable minor, engage in unlawful activity.[47]

In the case of an offense resulting in bodily injury to a victim, the order of restitution shall require a defendant to reimburse the victim for their income lost a result of such offense.[48] Courts have held or recognized that a sentencing court may properly include the amount of the defendant's profit or gain from the criminal offense convicted of as a measure of the amount of restitution the defendant is required to pay the victim under this statute.[49]

To summarize, Jane Doe respectfully requests that her lost wages be calculated based on the Defendant's ill-gotten gains of $15,000 because 18 U.S.C. § 1593(a) and the MRVA apply based on the Defendant's executed Plea Agreement. Therefore, this Court should include the greater dollar value of $15,000 to ensure there is fairness for crime depleted Jane Doe.

## **CONCLUSION**

In the interest of fairness to Jane Doe and in order to make her whole as far as possible, this Court should impose on the Defendant a restitution order for the full amount of Jane Doe's losses which total $1,466,482.82. *See Exhibit B*.[50]

---

conviction to all losses caused in the course of a defendant's criminal conduct, whether the defendant is convicted of each of those offenses or not.").

[46] *United States v. Butler*, 92 F.3d 960, 964 (9th Cir. 1996).

[47] Plea Agreement, at 4.

[48] 18 U.S. Code § 3663A(b)(2)(C) "reimburse the victim for income lost by such victim as a result of such offense;"

[49] *U.S. v. Adcock*, 534 F.3d 635 (7th Cir. 2008) (where the defendant, a supervisor of a low income housing authority, fraudulently obtained a contract for painting low income housing units by failing to disclose his interest in the painting company, the court upheld restitution under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C.A. § 3663A, in the amount of $41,174.09 representing the amount of the defendant's profit plus expenses incurred by the victim for an audit that uncovered the wrongdoing, rejecting the defendant's argument that the victim suffered no loss because the units were painted).

[50] The total of $1,466,482.82 is based on analysis under 18 U.S.C. § 2259 for lost future income earnings, future costs of medical services relating to psychiatric and psychological support, attorney fees and related costs and relocation costs incurred, as well as lost wages based on the ill-gotten gains analysis under 18 U.S.C. § 1593(a).

VICTIM'S SUPPLEMENTAL SUBMISSION ISO RESTITUTION

DATED this 23rd day of August, 2021.          Respectfully submitted,

By */s/Rose Mukhar*

ROSE M. MUKHAR
JUSTICE AT LAST
Pro Bono Attorney for Victim Jane Doe

# CERTIFICATE OF ELECTONIC SERVICES

I hereby certify that I am an employee of Justice At Last and I am of such age and discretion as to be competent to serve papers.

That on August 23, 2021, I served an electronic copy of the above and foregoing VICTIM'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF RESTITUTION by electronic service (ECF) to the persons named below:

Nisha Brooks-Whittington
nisha_brooks-whittington@fd.org

Kathryn Newman
Kathryn_Newman@fd.org

Paul Riddle
 Paul_Riddle@FD.ORG

Elham Roohani
Elham.Roohani@usdoj.gov,

Christopher Burton
Christopher.Burton4@usdoj.gov

Daniel B Heidtke
dbheidtke@duanemorris.com,

*/s/Rose M Mukhar*
Rose Mukhar
rose@justiceatlast.org